# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BYRON WILLIS,** <br><br> **Plaintiff** <br><br> v. <br><br> **CITY OF BAKERSFIELD, LISA WEDEKING-WHITE, SANTOS LUEVANO, and DOES 1-10 inclusive,** <br><br> **Defendants** | CASE NO. 1:21-CV-1077 AWI JLT <br><br> **ORDER ON CITY DEFENDANTS' MOTIONS TO DISMISS** <br><br> (Doc. No. 23) |

This is a civil rights lawsuit by Plaintiff Byron Willis against the City of Bakersfield ("the City"), City Police Officers Lisa Wedeking-White ("Wedeking-White") and Santos Luevano ("Luevano") that arises from the arrest of Willis by City law enforcement officers. Defendants removed this case from the Kern County Superior Court. Following an order of dismissal, the current Complaint is the First Amended Complaint ("FAC"), which includes state law claims for false imprisonment/false arrest and malicious prosecution and a 42 U.S.C. § 1983 claim. Currently pending before the Court is Defendants' Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion will be granted.

## **RULE 12(b)(6) FRAMEWORK**

*Legal Framework*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**FACTUAL BACKGROUND**

On December 3, 2019, Willis drove in his car from Bakersfield, California to Delano, California with his friend, M. Hill. Willis and Hill started driving to Delano before 10:00 a.m. and were in Delano from 11:00 a.m. to 2:00 p.m. Willis had his cell phone with him, which had GPS capabilities.

Also on December 3, 2019, around 11:16 a.m., an unidentified male physically attacked a fifty-year old Hispanic woman ("MM") in an apartment complex in Bakersfield.

1        The Bakersfield Police Department ("BPD") investigated the attack.  MM described the
2 attacker as a black man in his twenties weighing 150 lbs.  Another witness told police that the
3 unidentified attacker matched the description of a homeless man that frequented the area.  BPD
4 officers also found a person who "matched" the description of the suspect and detained a black
5 man with a brown complexion in his late fifties.

6        Wedeking-White and other officers prepared a composite sketch and released it to the
7 media.  The composite sketch and press release described the suspect as a black male, age 25-30,
8 dark complexion, between 5' 4" and 5' 6" tall, between 150-160 lbs., and slim build.  The press
9 release noted that the suspect was wanted for the attempted rape of a woman at a Bakersfield
10 apartment complex.  BPD has a policy of preparing composite sketches without any safeguards to
11 protect against misidentification.  The description of the suspect was not reasonably specific to
12 Willis and there was no corroborating evidence that Willis was responsible for the attack.

13        BPD also prepared a six photograph photo lineup that included Willis's photo.  MM picked
14 out Willis from the photo lineup even though Willis is 5' 9", weighs 203 lbs., and has a large
15 athletic build.  BPD has a policy of preparing photo lineups without adequate safeguards against
16 misidentification.

17        BPD applied for and obtained an arrest warrant for Willis.  Willis was arrested by BPD
18 officers on December 4, 2019.

19        BPD interviewed Willis, who denied physically attacking or attempting to rape MM.
20 Willis explained that he was in Delano and not in Bakersfield at the time of the incident and that
21 he has obvious scars on his face which are usually the first thing that people notice about him.
22 Willis also gave BPD a timeline, signed a consent form to allow BPD to search his phone
23 (including GPS related functions), consented to a DNA swab, offered to undergo a lie detector
24 test, denied that either his fingerprints or DNA would be found at the apartment complex or on
25 MM, and never asked for an attorney.  However, Luevano and other BPD law enforcement
26 officers refused to seriously consider his phone's GPS information or investigate Willis's claim
27 that his phone's data would exonerate him.  Luevano told Willis that the phone was no longer
28 pertinent to the investigation, even though less than 48-hours had expired.  BPD decided without

3

thoroughly investigating the facts that Willis was guilty of attempting to rape MM and refused to investigate any evidence that would exonerate Willis.

Despite Willis's denial and exonerating evidence, BPD arrested Willis. Willis was booked into the Kern County jail for attempted rape and false imprisonment. BPD did not have probable cause to formally arrest Willis or detain him beyond the initial questioning or book him in prison. BPD acted maliciously because its acts were not supported by probable cause. Willis was factually innocent and provided BPD with information to prove his innocence, but BPD failed to investigate Willis's claims of innocence.

BPD issued a press release about Willis's arrest. The press release included Willis's photo and accused him of attempted rape and false imprisonment. The press release was published on BPD's Facebook page. The press release was picked up by several media outlets, who published the story to the Bakersfield community at large. From that day forward, Willis was allegedly labeled as a rapist or pervert.

The Kern County District Attorney ("KCDA") charged Willis with attempted rape and false imprisonment. The KCDA offered several deals to Willis without investigating the facts of the case. One deal was for 31 years in prison, and the other was for 20 years in prison. Willis rejected both deals because he did not attack MM.

On January 30, 2020, Willis was released from custody.

It was not until July 29, 2020, that the KCDA finally dismissed the charges filed against Willis. Following his release, BPD did not issue a press release about Willis's release from custody or the KCDA's dismissal of the charges against Willis.

Willis alleges that his reputation has been harmed. Willis is still viewed as a rapist or pervert and has been unable to find work due to the negative publicity surrounding his arrest and criminal prosecution. Wills alleges that he experiences feelings of helplessness, fear, fatigue, and sleeplessness as a result of his detention and arrest.

On October 2, 2020, Willis filed a Government Claims Act claim against the City. The City rejected the claim on October 13, 2020. On October 28, 2020, Willis filed an application to present a late claim with the City. The City did not act on the application.

**DEFENDANTS' MOTION TO DISMISS**

*Defendants' Arguments*

Defendants argue that the FAC should be dismissed because it is unsigned and the Court's prior dismissal order warned that the failure to file a timely amended complaint would result in the withdrawal of leave to amend and the closure of the case without further notice. Apart from this procedural failure, Defendants argue that no plausible claims are stated.

With respect to Wedeking-White, the sole allegation against her is that she prepared a composite sketch, which was released to the media. There are no allegations that Wedeking-White participated in preparing the photo lineup, that she was involved in obtaining the arrest warrant, or that she was involved in the investigation or arrest of Willis. Thus, there are no facts that support a claim against her.

With respect to the state law claims against the City, Willis has failed to identify a statute that would form the basis of any liability. The Court previously advised Willis that it was necessary to identify a statutory basis for liability.

With respect to the first cause of action for false imprisonment/false arrest, there are insufficient allegations to invalidate the arrest warrant. The FAC simply states that Willis's arrest was based on unreliable eyewitness testimony and a highly suggestive photo lineup. The facts do not show that the arrest warrant was invalid or premised on knowingly false information. Without such facts, there can be no liability pursuant to Penal Code § 847(b)(1) and Civil Code § 43.55.

With respect to the second cause of action for malicious prosecution, Defendants argue that they are immune under Gov. Code § 821.6.

With respect to the third cause of action under § 1983, to the extent that Willis is attempting to allege a constitutional false arrest/imprisonment claim, the claim fails for the same reasons as the state law claim. There are no allegations that the arrest warrant was invalid on its face or not supported by probable cause, nor are there allegations of judicial deception or that the warrant application was too lacking in probable cause. Additionally, there are no allegations that the Defendants had anything to do with the length of time that Willis spent incarcerated. There are simply no facts that support a violation of the Fourth or Fourteenth Amendment.

5

*Plaintiff's Opposition*

Willis argues that the FAC is actually a draft amended complaint that was unsigned and inadvertently filed. Willis requests that the Court accept the FAC as the operative pleading, give counsel the opportunity to sign the FAC, or grant leave to amend.

With respect to the state law claims against the City, it can be liable for failing to discharge a mandatory duty as stated in Gov. Code § 815.6. Willis argues that he has a Fourth and Fourteenth Amendment right to be free from unjustifiable criminal charges and that Penal Code § 236 also prohibits false imprisonment. These are the legal bases for liability against the City.

With respect to the first cause of action, the FAC alleges that Willis was imprisoned for 60 days without lawful privilege because the Defendants did not have probable cause to arrest him. BPD officers investigated the crime, prepared a composite sketch without any appropriate safeguards against misidentification, and arrested Willis on the basis of an unreliable eye-witness identification involving members of different racial groups and a highly suggestive photo lineup. BPD officers failed to investigate and withheld exculpatory evidence from the judge in obtaining a warrant because there is no indication that the warrant application addressed the size and weight disparities between Willis and MM's attacker. Willis could only be the perpetrator if he shrunk 3 to 5 inches and lost 50 pounds in a 24 hour period.

With respect to malicious prosecution under § 1983, the FAC alleges that he was detained for 60 days based on tainted and incomplete evidence, not probable cause. The proceedings ended in Willis's favor, and the prosecution was initiated through an incomplete investigation, a composite sketch that was made without adequate safeguards, unreliable eyewitness testimony, and a highly suggestive photo lineup.

With respect to § 1983 in general, the FAC alleges improper policies with respect to the creation of composite sketches and photo lineups without adequate safeguards to prevent misidentifications. Application of these policies led to Willis being deprived of his right to be free from unreasonable seizures. Further, the FAC alleges that Wedeking-White prepared the composite sketch without adequate safeguards. The sketch allowed MM to select Willis from a photo lineup because it did not allow MM to see Willis's actual height or weight. Further,

6

Luevano applied for the search warrant with reckless disregard for the truth because he omitted the size differences between Willis and the perpetrator.  If that information had been included, the arrest warrant would not have issued.

With respect to Wedeking-White more specifically, she prepared the composite sketch without adequate safeguards against misidentification.  "Defendant, acting through Officer White and others, violated Mr. Willis's constitutional and statutory rights."  "Defendant" arrested Willis based on unreliable eyewitness testimony, lacked probable cause to arrest, and presented information in a misleading way that resulted in the unjustifiable criminal prosecution of Willis.

*Discussion*

After review, there are numerous problems with the FAC.

1. Procedural Failure

The FAC is unsigned by Willis's attorney.  Every pleading, such as a complaint, see Fed. R. Civ. P. 7(a), must be signed by a party's attorney.  Fed. R. Civ. P. 11(a).  "The court must strike an unsigned [pleading] unless the omission is promptly corrected after being called to the attorney's . . . attention."  Fed. R. Civ. P. 11(a).  Willis's counsel explains that the FAC was a draft that was inadvertently filed.  Because Willis's counsel admits that the FAC is unsigned (albeit through inadvertence), the Court will follow Rule 11(a) and strike the FAC.

2. Lumping Defendants

Generally, complaints that lump defendants together without adequately distinguishing claims and alleged wrongs among the defendants are improper because they do not give adequate notice.  See Yellowcake, Inc. v. Morena Music, Inc., 2021 U.S. Dist. LEXIS 144231, *26 n.3 (E.D. Cal. Aug. 2, 2021); Culinary Studios, Inc. v. Newsom, 517 F.Supp.3d 1042, 1074-75 (E.D. Cal. 2021).  Once again, the FAC improperly lumps defendants and unnamed "BPD officers" together.  See Doc. No. 19 at 22:16-18.  The FAC reasonably alleges that Wedeking-White worked with MM to create the composite sketch, and that Luevano interviewed and arrested Willis, despite Willis's claims and evidence of innocence.  See FAC ¶¶ 17, 24, 25.  That is the only culpable conduct that is reasonably attributable to any named defendant.  The remainder of the allegations are against "defendants" or "BPD officers."  These general "lumping allegations"

7

are insufficient to provide adequate notice to any named defendant. See Culinary Studios, 517 F.Supp.3d at 1074-75.

### 3. Third Cause of Action – 42 U.S.C. § 1983

The allegations under the third cause of action are unclear. Based on the allegations, it appears that Willis is trying to allege three distinct claims: (1) false arrest; (2) malicious prosecution; and (3) *Monell* liability based on the false arrest. The Court will examine each theory separately.

#### a. False Arrest[1]

Initially, the FAC's specific allegations relating to Wedeking-White indicate that she worked with MM to create the composite sketch of MM's attacker. See FAC ¶ 17. There are no allegations that clearly and expressly identify any conduct by Wedeking-White in the process of obtaining the arrest warrant, investigating Willis, or arresting Willis. That is, the FAC suggests that Wedeking-White was merely a "sketch artist." In the absence of express allegations against Wedeking-White that describe some integral role in Willis's arrest, there is no plausible false arrest claim against her.[2]

##### (1) Arrest Warrant

All arrests, either with or without a warrant, must be supported by probable cause. See United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990). Probable cause exists when law enforcement officers know reasonably trustworthy information sufficient that would warrant a prudent person into believe that the accused had committed or was committing an offense. Hernandez v. Skinner, 969 F.3d 930, 938 (9th Cir. 2020); Del Vizo, 918 F.2d at 825. Generally, an arrest pursuant to a warrant does not violate the Fourth Amendment. See KRL v. Estate of Moore, 512 F.3d 1184, 1189 (9th Cir. 2008). However, if judicial deception is involved, i.e. a warrant application that contains deliberate falsehoods or a reckless disregard for the truth,

---

[1] The Court reads this claim as being based on an arrest without probable cause.

[2] Willis's opposition indicates that the composite sketch allowed MM to select Willis from a photo lineup. However, it is unclear how the sketch "allowed" MM to do any such a thing. As an eyewitness, MM was capable of reviewing the photo lineup and making an identification without the sketch. Moreover, how the sketch may have been used by other unknown BPD officers or even MM says nothing about the culpability of Wedeking-White, who appears to have only created the sketch.

including omissions, see Chism v. Washington, 661 F.3d 380, 386-89 (9th Cir. 2011); see also Cameron, 713 F.3d at 1019 (noting that "a police officer may not deliberately omit facts that would otherwise negate a showing of probable cause."), or if the warrant application is so lacking in indicia of probable cause that it renders official belief in probable cause unreasonable, see KRL, 512 F.3d at 1189-90, then the existence of the warrant will not immunize the officer for an arrest without probable cause. See Smith v. Alamada, 640 F.3d 931, 937 (9th Cir. 2011).

Willis argues that the arrest warrant was infirm because the judge was not informed about the height and weight differences between the man described by MM and himself. However, the FAC does not include such allegations, indeed there are no allegations that describe what was included in the warrant application or why the warrant was infirm. A complaint cannot be saved by new facts and claims that are raised in an opposition. See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Nevertheless, in terms of height and weight, and in the context of arrest warrants for a particular individual, the Ninth Circuit has recognized that height and weight discrepancies can affect probable cause to arrest. See Garcia v. County of Riverside, 817 F.3d 635, 640-42 (9th Cir. 2016) (and cases cited therein). Constitutional violations can be found when there are "significant differences" between the arrestee and the true suspect. Rivera v. County of L.A., 745 F.3d 384, 391 (9th Cir. 2014). Generally, height differences of five inches or less appear to be insignificant and do not undermine probable cause. E.g. Rodriguez v. Farrell, 280 F.3d 1341, 1348 (11t h Cir. 2002) ("[A] mistaken estimate of no more than five inches does not equal a constitutional violation."); White v. Olig, 56 F.3d 817, 818-20 (7th Cir. 1995) (holding that a height difference of five inches and race confusion did not invalidate the arrest). Similarly, weight differences of around twenty-five pounds generally appear to be insignificant and do not undermine probable cause. E.g. Martinez v. Muentes, 340 F. App'x 700, 701-02 (2d Cir. 2009) (holding that a height difference of two inches and a weight difference of twenty pounds was insignificant); Hill v. Scott, 349 F.3d 1068, 1072 (8th Cir. 2003); Frasier v. McCallum, 2016 U.S. Dist. LEXIS 91791, *15-*16 (N.D. Fla. Mar. 21, 2016) (holding that a height difference of four inches and a weight difference of twenty-five pounds was insignificant).

Here, the height difference is between three and five inches and the weight difference is between forty-three and fifty-three pounds. Because BPD used a photograph of Willis as part of a photo lineup, it can reasonably be assumed that Willis had previously been arrested by BPD and that BPD had Willis's height and weight from that arrest. Further, because height for an adult is usually static, the Court will assume that Willis's height did not change from the time of his unknown prior arrest to the time of the photo lineup and warrant application. The Court, however, cannot make similar assumptions about Willis's weight. It is well known that a person's weight can vary dramatically over the course of months, years, and a lifetime. Willis's weight at the unknown time of his prior arrest could be significantly different from the time of the photo lineup and warrant application. Therefore, in the absence of express allegations that address Willis's weight history, the Court will only infer that BPD knew of Willis's height at the time of the photo lineup and warrant application. Because the height difference between Willis and the perpetrator described by MM was only three to five inches, the height difference alone would not undermine probable cause or make the warrant invalid. See Rodriguez, 280 F.3d at 1348; White, 56 F.3d at 818-20.

Because Willis has only argued that the weight and height differences between himself and the perpetrator undermine the validity of the warrant,[3] the allegations in the complaint do not plausibly undermine the warrant's validity.[4] Therefore, the FAC does not plausibly allege a false arrest claim based on an invalid warrant.

### (2)   Dissipated Probable Cause

Once probable cause is established, officers are under "no duty to investigate further or to look for additional evidence which may exculpate the accused." Cameron v. Craig, 713 F.3d

---

[3] The FAC alleges that the photo lineup was conducted without adequate safeguards to prevent a misidentification. While an unduly suggestive photo lineup could undermine probable cause, see Cameron v. Brown, 721 F. App'x 612, 613-14 (9th Cir. 2017); Grant v. City of Long Beach, 315 F.3d 1081, 1086 (9th Cir. 2002), *opinion amended on denial of reh'g*, 334 F.3d 795 (9th Cir. 2003), as discussed *infra*, the FAC's allegations do not adequately identify what the inadequate policies are or why the lineup was unduly suggestive. Therefore, Willis has not adequately alleged any claims based on an improper photo lineup, including a false arrest claim.

[4] The FAC also alleges that the MM's identification of Willis from the photo lineup was suspect because MM and Willis are members of different racial groups. However, Willis cites no authority that the mere fact that MM and Willis are members of different racial groups make MM's identification Willis unreliable or undermines the existence of probable cause.

1012, 1019 (9th Cir. 2013); Broam, 320 F.3d at 1032. Nevertheless, officers cannot disregard facts that tend to dissipate probable cause. Nicholson v. City of L.A., 935 F.3d 685, 691 (9th Cir. 2019); United States v. Lopez, 482 F.3d 1067, 1073 (9th Cir. 2007). "If probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity." United States v. Ortiz-Hernandez, 427 F.3d 567, 574 (9th Cir. 2005). Probable cause may cease to exist even after a warrant has issued. United States v. Grubs, 547 U.S. 90, 95 n.2 (2006); see also Bennet v. Macarthur, 956 F.3d 1291, 1297 (11th Cir. 2020). "A person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated." O'Doan v. Sanford, 991 F.3d 1027, 1041 (9th Cir. 2021); Nicholson, 935 F.3d at 691; Ortiz-Hernandez, 427 F.3d at 574. However, once a prosecutor has filed charges, the arresting officers will generally be found immune for the continued detention. See Ewing v. City of Stockton, 588 F.3d 1218, 1232 (9th Cir. 2009).

Here, the FAC's allegations are unclear. The FAC alleges that BPD obtained an arrest warrant and arrested Willis on December 4, 2019. See FAC ¶¶ 21, 22. However, the FAC also alleges that, despite his denials and contrary evidence, BPD arrested Willis. See id. at ¶¶ 25, 26. These allegations do not clearly indicate when Willis was actually arrested. They could be construed as indicating that Willis was arrested either before or after the interview with Luevano. Given the structure of the relevant paragraphs (21 through 26), the Court will construe the FAC as alleging the following timeline: an arrest warrant was issued for Willis, Willis was interviewed by Luevano on December 4, and Willis was arrested by Luevano on December 4 after the interview.

So construing the FAC, the allegations indicate a number of significant facts that occurred after the arrest warrant was issued, but before Willis was actually arrested. First and foremost, while Luevano was interviewing Willis, the height and weight differences between Willis and the perpetrator described by MM would have been apparent. Willis is three to five inches taller than the described perpetrator and between forty-three and fifty-three pounds heavier. Considering that Willis was interviewed less than 48 hours after MM was attacked, the weight difference is particularly significant as no one can gain between forty and fifty pounds in the span of two days.

Further, MM described her attacker as having a slim build, but Willis describes himself as having a large athletic build.  Also, Willis appears to have been cooperative in that he consented to a DNA swab, signed a consent form that allowed BPD to search his phone (including information that would have tracked the phone's whereabouts), offered to take a lie detector test, and never asked for an attorney.[5]  Willis also gave Luevano an alibi (he was in Delano at the time of the attack), identified a corroborating witness (Hill), and denied that any DNA or fingerprint evidence that matched him would be found on MM or at the scene.  Also, the FAC alleges that Willis explained that he had scars by his mouth and that the scars are usually the first thing that people notice about him, yet there are no allegations that MM mentioned the scars in creating the composite sketch, nor is there an indication that the scars were on Willis's photo in the photo lineup.[6]  Finally, another witness had informed BPD officers that MM's attacker matched the description of a homeless man who frequented the area of the apartment complex.

      Viewing the above allegations in the light most favorable to Willis, see Kwan, 854 F.3d at 1096, the allegations collectively could support a finding that any probable cause that existed at the time that the arrest warrant issued had dissipated by the time that Luevano arrested and booked Willis.  However, because the FAC is unsigned in violation of Rule 11, that a plausible false arrest claim is found within the FAC will not prevent the dismissal of the FAC.  See Fed. R. Civ. P 11(a).

      b.      Malicious Prosecution

      To maintain a § 1983 claim for malicious prosecution, a plaintiff must allege "that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right."  Lacey v. Maricopa Cnty., 693 F.3d 896, 919 (9th Cir. 2018); Smith v. Almada, 640 F.3d 931, 938 (9th Cir. 2011); Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).  Further, a plaintiff must show that the prior prosecution terminated in a manner that indicates innocence, i.e. a favorable termination.  Lacey, 693 F.3d at 919; Awabdy, 368 F.3d at 1066-68.  Claims of malicious

---

[5] The Court does not suggest that invoking a constitutional right to counsel can be construed as being uncooperative or evidence of guilty.

[6] Depending on the age of the photo used in the photo lineup, Willis could have gotten the scars after the photo was taken.

12

prosecution may be brought against police officers or others who wrongfully caused the prosecution to occur. Smith, 640 F.3d at 938; Awabdy, 368 F.3d at 1066. Probable cause is an absolute defense to a malicious prosecution claim. Smith, 640 F.3d at 938; Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55 (9th Cir. 2009). "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." Awabdy, 368 F.3d at 1067. However, if a plaintiff can show that an officer applied improper pressure on the prosecutor, or knowingly provided a district attorney with misinformation, or concealed exculpatory information, or otherwise engaged in wrongful conduct, the presumption of prosecutorial independence may be rebutted. See McSherry v. City of Long Beach, 584 F.3d 1129, 1136 (9th Cir. 2009); Awabdy, 368 F.3d at 1067.

     Here, the FAC indicates that "Defendants" were actively involved in causing Willis to be arrested and in causing the continuation of the prosecution. See FAC ¶ 76. The Court reads this allegation as implicating a federal malicious prosecution claim. In the prior motion to dismiss, the Court was satisfied that the allegations collectively could reasonably be viewed as indicating that charges were dropped due to Willis's innocence. See Doc. No. 19 at 9:23-10:7. The Court continues to maintain that view. Further, as discussed above, the allegations suggest that, by the time of the arrest, probable cause to arrest had dissipated. Nevertheless, the FAC also indicates that the KCDA filed and pursued criminal charges against Willis. That decision is presumed to be an independent determination, which would preclude liability against any BPD officer for malicious prosecution. See Awabdy, 368 F.3d at 1067. The FAC does not contain allegations that any named defendant engaged in any kind of improper conduct that would sufficiently rebut the presumption of prosecutorial independence. Also, the FAC does not allege that any named defendant caused the prosecution of Willis in order to deny him a particular federal right. Finally, all of the allegations under the third cause of action identify only "Defendants" generally, there are no allegations that identify specific acts by either Luevano or Wedeking-White. Therefore, no plausible malicious prosecution claim is alleged in the FAC against any named Defendant. See Lacey, 693 F.3d at 919; Awabdy, 368 F.3d at 1066-68.

       c.      <u>*Monell* Liability</u>

A municipality "cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a respondeat superior theory." <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 691 (1978); <u>Castro v. Cnty. of L.A.</u>, 797 F.3d 654, 670 (9th Cir. 2015). Municipal liability may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. See <u>Thomas v. County of Riverside</u>, 763 F.3d 1167, 1170 (9th Cir. 2014); <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008). Thus, a municipality may be held liable for a violation of federal law under § 1983 "only if the county has adopted an illegal or unconstitutional policy or custom," <u>Robinson v. Solano Cnty.</u>, 278 F.3d 1007, 1016 (9th Cir. 2002), and the execution of that policy or custom causes a violation of federal law. <u>Ulrich v. City & Cnty. of San Francisco</u>, 308 F.3d 968, 984 (9th Cir. 2002). Allegations of *Monell* liability involving a policy, practice, or custom will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur. <u>McFarland v. City of Clovis</u>, 163 F.Supp.3d 798, 802 (E.D. Cal. 2016); <u>Young v. City of Visalia</u>, 687 F.Supp. 2d 1141, 1149-50 (E.D. Cal. 2009).

Here, the FAC's *Monell* allegations are deficient. The FAC indicates that procedures with respect to the composite sketch and the photo lineup are insufficient because they contain inadequate safeguards against misidentification. However, there is no description of how and why the procedures/safeguards are inadequate or why the policies make a misidentification likely. Simply alleging that a policy is inadequate or contains insufficient safeguards does not actually identify a particular flaw in the policy or the safeguards. Without identifying the particular aspect

14

of the policies or safeguards that are deficient, the Court cannot assess either causation or deliberate indifference.[7] Therefore, the FAC fails to plausibly allege *Monell* liability against the City.[8] Young, 687 F.Supp. 2d at 1149-50.

### 4. First Cause of Action – State Law False Imprisonment or False Arrest

A police officer may be held liable for false arrest if *inter alia* the arrest or confinement is "without lawful privilege." Asgari, 15 Cal.4th at 757. However, California prohibits liability against "any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." Cal. Civ. Code § 43.55; Venegas v. County of L.A., 153 Cal.App.4th 1230, 1246 (2007); Lopez, 207 Cal.App.3d at 7. Further, "Penal Code § 847 precludes actions for civil liability against any peace officer for false imprisonment if he was acting within the scope of his authority and the arrest was lawful or if, at the time of the arrest, the officer had reasonable cause to believe the arrest was lawful." Lopez, 207 Cal.App.3d at 7 (citing Cal. Pen. Code § 847(b)(1)); see also Venegas, 153 Cal.App.4th at 1246. Immunity under Civil Code § 43.55 and Penal Code § 847 require reasonable conduct on the part of a defendant officer. Bell v. California, 63 Cal.App.4th 919, 929 (1998).

With respect to the individual Defendants, the Court's above analysis with respect to the federal false arrest claim applies to this claim as well. Thus, there are inadequate allegations against Wedeking-White, there are insufficient allegations that undermine the warrant application, and there appears to be a plausible claim against Luevano based on dissipated probable cause.

With respect to the City, through Cal. Gov. Code § 815, "all government tort liability must be based on statute." Hoff v. Vacaville Unified Sch. Dist., 19 Cal.4th 925, 932 (1998); Churchman v. Bay Area Rapid Transit Dist., 39 Cal.App.5th 246, 250 (2019). For direct liability against a government entity, a "specific statute declaring [the entity] liable, or at least creating

---

[7] This particularly true with respect to the composite sketch. From a lay perspective, creating a composite sketch would seem to involve little more than a sketch artist speaking with a witness and attempting to draw the person being described by the witness. It is unclear what policies would be involved in such a process or how those policies could constitutionally affect Willis.

[8] Additionally, since there are no plausible claims alleged against Wedeking-White, there can be no *Monell* liability based on conduct by Wedeking-White. See Yousefian v. City of Glendale, 779 F.3d 1010, 1016 (9th Cir. 2015).

some specific duty of care," must be identified. Eastburn v. Regional Fire Protection Auth., 31 Cal.4t h 1175, 1183 (2003); Leon v. County of Riverside, 64 Cal.App.5th 837, 850 (2021).  For vicarious liability, Cal. Gov. Code § 815.2(a) "expressly makes the doctrine of *respondeat superior* applicable to public employers." Hoff, 19 Cal.4th at 932.  Therefore, be it § 815.2(a) or another statute, a plaintiff must identify a statute in order to state a plausible claim against a municipal entity. Young, 687 F.Supp.2d at 1164.

Here, the FAC does not cite to § 815.2, nor does it identify any statutory basis for liability for a false arrest.  The FAC cites *B.H. v. County of San Bernardino*, 62 Cal.4th 168 (2015), *State Dept. of State Hosps. v. Superior Ct.*, 61 Cal.4th 339, 348 (2015), and *Guzman v. County of Monterey*, 46 Cal.4th 887 (2009).  However, none of those cases involve a statute that is applicable to this case.  *B.H.* involved mandatory reporting duties of child abuse under Cal. Penal Code § 11166, see B.H., 62 Cal.4th at 180-81; *State Hosps.* involved aspects of the Hereditary Disorders Act (Cal. Health & Saf. Code § 124975, et seq.), see State Hosps., 61 Cal.4th at 349; and *Guzman* involved aspects of the California Safe Drinking Water Act (Cal. Health & Saf. Code § 116270 et seq.).  See Guzman, 46 Cal.4th at 900.  Further, while Willis's opposition indicates that the Fourth Amendment and Cal. Penal Code § 236 impose mandatory duties, that allegation is not part of the FAC, see Broam, 320 F.3d at 1026 n.2, and, importantly, Willis fails to cite any authority that has found mandatory duties for purposes of Cal. Gov. Code § 815 or § 815.6 through the Fourth Amendment or through Cal. Penal Code § 236, which defines the crime of false imprisonment.  See People v. Smith, 4 Cal.5t h 1134, 1141 (2018) (noting that a jury had convicted the defendant of one count of false imprisonment under § 236).   Therefore, because no statutory basis for liability has been identified, the first cause of action contains no plausible claims against the City.  See Young, 687 F.Supp.2d at 1164.

     5.     Second Cause of Action – State Law Malicious Prosecution

Under Cal. Gov. Code § 821.6, a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6; Mendez v. County of L.A., 897 F.3d 1067, 1083 (9th Cir. 2018); Asgari v. City of L.A., 15

Cal.4th 744, 752 (1997). This immunity shields public employees, including police officers, from claims of malicious prosecution. See Asgari, 15 Cal.4th at 756-57; see also Mendez, 897 F.3d at 1083; Sullivan v. County of L.A., 12 Cal.3d 710, 719 (1974).

Here, Willis does not address the application of § 821.6 to his state law malicious prosecution claim. Pursuant to § 821.6, Wedeking-White and Luevano are entitled to immunity. See Cal. Gov. Code § 821.6; Asgari, 15 Cal.4th at 756-57. Further, because the individual officers are immune under § 821.6, the City is entitled to derivative immunity. See Cal. Gov. Code § 815.2(b) ("Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."); Asgari, 15 Cal.4th at 752 n.2; Caldwell v. Montoya, 10 Cal.4th 972, 980 (1995); see also Gantt v. County of L.A., 772 F.3d 608, 623 (9th Cir. 2014). Therefore, the state law malicious prosecution claim is not viable. See Cal. Gov. Code §§ 815.2(b); 821.6; Asgari, 15 Cal.4th at 752, 756-57.

6. Leave to Amend

As discussed above, the FAC must be stricken because it is unsigned and violates Rule 11(a). A review of the FAC indicates that Willis can allege plausible state and federal false arrest claims against Luevano. No other plausible claims are apparent from the FAC, and many of the deficiencies discussed above were also present in the original complaint. Nevertheless, except for the state law malicious prosecution claim, the Court will grant leave to amend. An amended complaint must allege all bases for 42 U.S.C. § 1983 liability as separate and distinct causes of action,[9] not lump defendants together, must identify specific wrongful conduct by Wedeking-White or else drop her as a party, and must identify a statutory basis for liability for any state law claims against the City.

---

[9] For example, the first cause of action could be a § 1983 claim for false arrest and the second cause of action could be a cause of action for *Monell* liability. Grouping multiple § 1983 claims, i.e. different constitutional violations or theories, under a single cause of action as was done in the FAC is confusing. It unnecessarily causes the Court and counsel to try and ferret out various theories that may be lurking among the various allegations. There is no reason why a litigant who is represented by counsel cannot expressly allege each constitutional violation as a separate § 1983 cause of action.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 23) is GRANTED;
2. The First Amended Complaint (Doc. No. 21) is STRICKEN;
3. Within twenty-one (21) days of service of this order, Plaintiff may file an amended complaint that is consistent with the analyses and directions of this order;[10] and
4. Failure to timely file a signed amended complaint will result in the automatic withdrawal of leave to amend and the closure of this case without further notice.

IT IS SO ORDERED.

Dated: __June 27, 2022__           _____
                                    SENIOR DISTRICT JUDGE

---

[10] To be clear, the state law malicious prosecution claim is dismiss without leave to amend.